Neil K. DIETRICH et al., On behalf of themselves and other residents of their neighborhood organized as Concerned Kalorama Citizens, Petitioners,

v.

DISTRICT OF COLUMBIA BOARD OF ZONING ADJUSTMENT, Respondent.

Patrick A. O'Boyle, Roman Catholic Archbishop of Washington, a corporation sole, Intervenor.

No. 6222.

District of Columbia Court of Appeals.

Argued May 9, 1972.

Decided July 17, 1972.

David G. Bress, Washington, D. C., with whom Thomas C. Green, Washington, D. C., was on the brief, for petitioners.

Leo N. Gorman, Asst. Corp. Counsel, with whom C. Francis Murphy, Corp. Counsel, and Richard W. Barton, Asst. Corp. Counsel, were on the brief, for respondent.

Nicholas D. Ward, Washington, D. C., with whom George E. Hamilton, III, Washington, D. C., was on the brief, for intervenor.

Before KELLY, FICKLING and NEBEKER, Associate Judges.

FICKLING, Associate Judge:

This is a petition for review of an order of the District of Columbia Board of Zoning Adjustment (BZA) granting the application of Archbishop Patrick A. O'Boyle, as a corporation sole, for a special exception to the Zoning Regulations to permit a change in the use of property located at 2200 California Street, N. W. We vacate the order of the BZA and remand the case because the BZA's findings are not supported by substantial evidence and because the BZA failed to give full reasons for its decision.

In 1961 the BZA granted a special exception to the Archbishop to use the premises as a "seminary for the education of young men for the priesthood" for a maximum of 120 students.[1] This use continued until 1971 when the Archbishop decided to cease the use as a preparatory seminary and to relocate Mackin School, a regular private boys' high school, in the building. In order to effectuate this change, the Archbishop applied to the BZA for permission to change the use of the property from a private seminary for the education of young men for the priesthood to a high school for 350 students. The BZA conducted a public hearing on the application in October 1971,[2] at which there was substantial neighborhood opposition to the application. On November 15, 1971, the BZA, in a 4-to-1 decision, conditionally granted the application for a period of three years, limiting enrollment to 300 students.

The property in question is located in an area zoned R–5–B (predominant use—medium density apartment house). The Zoning Regulations permit a private school in such an area only under the following conditions: (1) "where in the judgment of the Board [BZA] such special exceptions will be in harmony with the general purpose [3]

---

1. The building had previously been used as St. Rose's Technical School and later as St. Ann's Infant and Maternity Home.

2. An earlier hearing was held in June 1971 and, there being no opposition, the application was granted. Shortly thereafter, several nearby property owners filed a petition for rehearing alleging that the BZA had failed to give proper notice of the hearing. The BZA ordered a new hearing to be conducted in October 1971.

3. D.C.Code 1967, § 5–414, provides that the purposes of the Zoning Regulations are:
   [T]o lessen congestion in the street, to secure safety from fire, panic, and other dangers, to promote health and the general welfare, to provide adequate light and air, to prevent the undue concentration of population and the overcrowding of land, and to promote such distribution of population and of the uses of land as would tend to create conditions favorable to health, safety, transportation, prosperity, protection of property, civic activity, and recreational, educational, and cultural opportunities, and as would tend to further economy and efficiency in the supply of public services. Such regulations shall be made with reasonable consideration, among other things, of the character of the respective districts and their suitability for the uses provided in the regulations, and with a view to encouraging stability of districts and of land values therein.

and intent of the zoning regulations and maps" (Zoning Regs. § 8207.2); (2) the exception "will not tend to affect adversely the use of neighboring property in accordance with said zoning regulations and maps" (Zoning Regs. § 8207.2); (3) the school "is so located that it is not likely to become objectionable to adjoining and nearby property because of noise, traffic, number of students, or otherwise objectionable conditions" (Zoning Regs. § 3101.-42(a)); and (4) ample parking space is provided to accommodate the students, teachers, and visitors (Zoning Regs. § 3101.42(b)). The majority of the BZA concluded that all of these conditions had been met and therefore granted the exception. The questions before us are whether the BZA's findings support that conclusion and whether there are full reasons to support the BZA's findings.

There is no dispute that the proceeding in the case at bar was a "contested case" within the meaning of the District of Columbia Administrative Procedure Act (APA). D.C.Code 1967, § 1-1509 (Supp. V, 1972). This statute requires:

> Every decision and order adverse to a party to the case, rendered by . . . an agency in a contested case, shall be in writing and shall be accompanied by findings of fact and conclusions of law. The findings of fact shall consist of a concise statement of the conclusions *upon each contested issue of fact.* Findings of fact and conclusions of law shall be supported by and in accordance with the reliable, probative, and substantial evidence. . . . [D.C.Code 1967, § 1-1509(e) (Supp. V, 1972) (emphasis added).]

Petitioner argues, and we agree, that the BZA failed to make express findings of fact on several disputed issues of fact.

As noted above, one of the conditions for the grant of a special exception is that the school "is not likely to become objectionable to adjoining and nearby property because of . . . otherwise objectiona-

ble conditions." The BZA found that there was "massive neighborhood opposition" to granting the exception. Three objections, upon which the BZA made no express findings, were raised by the neighbors. These were: (1) an adverse effect on neighboring property values because of the school; (2) a loss of the use of a neighborhood public park (Mitchell Park) to the school's students; and (3) the inadequacy of the site for use as a boys' high school. Similarly, no express finding was made on the neighbors' claim that their property would be adversely affected, not only in a loss of property value but also in a general deterioration of the neighborhood caused by the influx of students indulging in vandalism, drug use, and other objectionable actions.

The BZA and the intervenor argue that we can infer findings on these objections from the findings that the BZA did make. We have consistently rejected such arguments in the past and we will continue to reject them. *See* Brewington v. District of Columbia Board of Appeals & Review, D.C.App., 287 A.2d 532, 534 (1972), and cases cited therein.

> When Congress requires a finding, its instruction is not to be ignored or given only lip service. The need for articulation of findings requires the decision-making body to focus on the value to be served by its decision and to express the considerations which must be the bases of decision. . . . (Footnote omitted.) [Joseph v. F.C.C., 131 U.S.App.D.C. 207, 211, 404 F.2d 207, 211 (1968).]

*See also* National Geographic Society v. District Unemployment Compensation Board, 141 U.S.App.D.C. 313, 317, 438 F.2d 154, 158 (1970); 2 F. Cooper, State Administrative Law 472 (1965); 2 K. Davis, Administrative Law § 16.07 (1958).

As Professor Davis has pointed out:

> The practical reasons for requiring administrative findings are so powerful that the requirement has been imposed

with remarkable uniformity by virtually all federal and state courts, irrespective of a statutory requirement. The reasons have to do with facilitating judicial review, avoiding judicial usurpation of administrative functions, assuring more careful administrative consideration, helping parties plan their cases for rehearings and judicial review, and keeping agencies within their jurisdiction. [2 K. Davis, Administrative Law § 16.05, at 444 (1958).][4]

■ There can be no doubt that the issues in question were "material" because they are within the conditions to be considered under the Zoning Regulations before an exception can be granted. *Compare* Minneapolis & St. L. R. R. v. United States, 361 U.S. 173, 193–194, 80 S.Ct. 229, 4 L.Ed.2d 223 (1959) (issues not material). Therefore, this case must be remanded for further proceedings.

■ We also note another defect in the BZA's order. Just as in Palmer v. BZA, D.C.App., 287 A.2d 535, 538 (1972), the findings here merely summarize the testimony and the conclusions simply echo the statutory language authorizing the grant of a variance. As we said in *Palmer,* this is not sufficient.

■ Professor Burrus, a leading commentator on administrative law, has pointed out that the task of administrative law is "to limit governmental excesses and thereby to insulate the individual from the arbitrary intrusions of an impersonal government. . . . Big or active government is not the evil; rather the danger persists in arbitrary or capricious government regardless of size." B. Burrus, Administrative Law & Local Government

11–12 (1963). Thus, the United States Supreme Court has repeatedly held that the function of the court in reviewing administrative action is to assure that the agency has given full and reasoned consideration to all material facts and issues. The court can only perform this function when the agency discloses the basis of its order by an articulation with reasonable clarity of its reasons for the decision. There must be a demonstration of a "rational connection between the facts found and the choice made." Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 167–168, 83 S.Ct. 239, 246, 9 L.Ed.2d 207 (1962). Generalized, conclusory, or incomplete findings are not sufficient. The findings must support the end result in a discernible manner, and the result reached must be supported by subsidiary findings of basic facts on all material issues. In short, as we have said before, there must be findings on each material fact with full reasons given to support each finding. Goldberg v. Kelly, 397 U.S. 254, 271, 90 S. Ct. 1011, 25 L.Ed.2d 287 (1970); FPC v. United Gas Pipe Line Co., 393 U.S. 71, 89 S.Ct. 55, 21 L.Ed.2d 55 (1968); Burlington Truck Lines, Inc. v. United States, *supra*; Phelps Dodge Corp. v. NLRB, 313 U.S. 177, 197, 61 S.Ct. 845, 85 S.Ct. 1271 (1941); Colonial Stores Inc. v. F. T. C., 450 F.2d 733, 739–740 (5th Cir. 1971); Sindicato Puertorriqueno De Trabajadores v. Hodgson, 145 U.S.App.D.C. 238, 246, 448 F.2d 1161, 1169 (1971); Greater Boston Television Corp. v. F. C. C., 143 U.S.App. D.C. 383, 392–93, 444 F.2d 841, 851–852 (1970); Community Service, Inc. v. United States, 418 F.2d 709, 720 (6th Cir. 1969); Robey v. Schwab, 113 U.S.App.D.C. 241, 244–245, 307 F.2d 198, 201–202 (1962); Palmer v. BZA, *supra*; K. Davis, Administrative Law § 16.12 (Supp.1970).

---

4. Sometimes, apparently seeking to avoid the hard work and the necessity of disciplined weighing of the testimony that is required in making definite findings on all the relevant basic facts, an agency merely summarizes the testimony of all the witnesses, and then (implying that the testimony in ways not particularized supports its conclusions) sets forth the ultimate conclusions of fact and law in statutory language. The courts agree that this is not a sufficient compliance with the mandate to make findings of fact. [2 F. Cooper, State Administrative Law, at 478 (1965) (footnote omitted).]

Finally, it is apparent that the hearing itself was not in conformity with the contested case requirements of the APA, D.C.Code 1967, § 1–1509 (Supp. V, 1972), because of failure to swear witnesses and permit cross-examination.

Reversed and remanded for new hearing.