Susanne M. LEE et al., Petitioners,

v.

DISTRICT OF COLUMBIA ZONING COMMISSION, Respondent, Paul H. Weinstein et al., Intervenor.

No. 12596.

District of Columbia Court of Appeals.

Argued Oct. 19, 1978.

Decided Feb. 8, 1980.

---

Susanne M. Lee pro se. Jon R. Stover, Washington, D. C., was on the brief for petitioners.

Edward L. Curry, Asst. Corp. Counsel, Washington, D. C., with whom John R. Risher, Jr., Corporation Counsel, Washington, D. C., at the time the brief was filed, Louis P. Robbins, Principal Deputy Corp. Counsel, Washington, D. C., when the brief was filed, and John C. Salyer, Asst. Corp. Counsel, Washington, D. C., were on the brief, for respondent.

Whayne S. Quin, Washington, D. C., with whom Norman M. Glasgow and Iverson O. Mitchell, III, Washington, D. C., were on the brief, for intervenor.

Before NEBEKER and FERREN, Associate Judges, and YEAGLEY, Associate Judge, Retired.

YEAGLEY, Associate Judge, Retired:

This is a petition seeking reversal of an August 11, 1977 order of the Zoning Commission of the District of Columbia which granted the application of Paul H. Weinstein, et al., intervenors in this action, to amend the zoning map. The amendment changed the zoning of two lots from classification R–1–B, which allows the construction of single-family detached dwellings, to classification R–3, which permits single-family rowhouse dwellings. The following issues are raised for our consideration: (1) Were the findings of fact and conclusions of law sufficient to meet the requirements of the District of Columbia Administrative Procedure Act (DCAPA), D.C.Code 1978 Supp., § 1–1509 et seq.? (2) Did the amendment constitute illegal "spot zoning"? (3) Did the Commission give "great weight" to the issues and concerns of the local Advisory Neighborhood Commission (ANC) as required under D.C.Code 1978 Supp., § 1–171i(d)? We remand for the Commission to make a finding on the question of parking facilities, but affirm in all other respects.

## I. PROCEEDINGS BELOW

The intervenors applied to the Zoning Commission to rezone lots 806 and 807, which are located on the southwest corner of MacArthur Boulevard and Arizona Avenue, Northwest.[1] These two lots are contiguous and constitute an area of approximately 57,000 square feet. They are bordered by four streets: MacArthur Boulevard, Arizona Avenue, Sherrier Place, and Galena Street.

A public hearing on the application was held by the Zoning Commission on February 14, 1977, pursuant to the requirements of D.C.Code 1973, § 5–415 and Title 20 of the District of Columbia Rules and Regulations, 20 D.C.R.R. § 1.1, et seq. Testimony and evidence comprising over 1000 pages of transcript were presented to the Commission by the applicant intervenors, the Municipal Planning Office (MPO), the Department of Transportation (DOT), the Department of Environmental Services (DES), and individuals and groups including the ANC and the Palisades Citizens Association, Inc.

On August 11, 1977, the Commission issued its findings of fact and conclusions of law with its order granting the requested amendments as to lots 806 and 807. After a motion for reconsideration was denied, this petition was timely filed.

## II. THE SUFFICIENCY OF THE COMMISSION'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

D.C.Code 1978 Supp., § 1–1509(e) mandates that in every contested case the ad-

---

1. The intervenors also applied for the rezoning of lot 833 which occupies an area of approximately 18,000 square feet in size and which is located due southwest of lots 806 and 807, bordered by Arizona Avenue and Sherrier Place. The application for rezoning lot 833 was denied by the Zoning Commission upon the recommendation of the Municipal Planning Office, the Palisades Citizens Association, Inc., and the ANC. The Commission, distinguishing lot 833 from lots 806 and 807 on the basis that it was smaller in size, off the major arterial streets, and further recessed into an R–1–B classified area, felt that a reclassification of lot 833 would have an unfavorable impact on the population distribution of the area and the health, safety, transportation, and protection of property.

There has been no questioning of the Commission's decision not to permit the rezoning of lot 833.

ministrative agency must accompany its decision with written

> findings of fact and conclusions of law. The findings of fact shall consist of a concise statement of the conclusions upon each contested issue of fact. Findings of fact and conclusions of law shall be supported by and in accordance with the reliable, probative, and substantial evidence.

■ The "substantial evidence" requirement of § 1–1509(e) has three components. First, the findings must address each material contested issue of fact. *Dietrich v. Board of Zoning Adjustment*, D.C.App., 293 A.2d 470, 472–73 (1972). Second, there must be sufficient evidence to support the factual findings made, *i. e.*, "such relevant evidence as a reasonable mind might accept as adequate . . . ." *Vestry of Grace Parish v. Alcoholic Beverage Control Board*, D.C.App., 366 A.2d 1110, 1112 (1976) (citation omitted). Finally there must be a rational connection between the findings made by the agency and the decision it reaches. *Brewington v. Board of Appeals and Review*, D.C.App., 299 A.2d 145, 147 (1973).

Petitioners maintain that the "substantial evidence" requirement has not been satisfied in this case because the findings fail to address all of the material issues contested before the Commission and that the conclusions of law contained in the order merely echo the statutory language and receive no rational support from the factual findings, and further, the evidence to support the factual findings is insufficient. We will discuss these contentions seriatim.

A. *The Adequacy of the Factual Findings.*

■ Petitioners have identified several "material" issues contested before the Commission which, they allege, the Commission failed to address in its findings of fact. This court has stated, however, that an issue is not necessarily "material" simply because evidence was presented on the point at the hearing. *See Wheeler v. Board of Zoning Adjustment*, D.C.App., 395 A.2d 85, 88–89 (1978), and an administrative agency does not have to make findings of fact upon contentions that are collateral or immaterial. *Minneapolis & St. Louis Ry. Co. v. United States*, 361 U.S. 173, 80 S.Ct. 229, 4 L.Ed.2d 223 (1959). Thus, while the language of § 1–1509(e) requires that issues be contested by the parties before the agency need address them in its findings, this court additionally requires that the issues concern matters which the agency must consider as part of its decision-making process. *See Wheeler v. Board of Zoning Adjustment, supra* at 88–89; *Dietrich v. Board of Zoning Adjustment, supra* at 473. For example, in *Dietrich* we reversed an order of the Board of Zoning Adjustment approving a special exception to the zoning map because the Board failed to enter factual findings on issues which were contested and which the Board was required to resolve by the Zoning Regulations. In contrast, in *Wheeler* we deemed the question of "neighborhood stability" an issue immaterial to the Board's decision whether to grant a special exception, since, even though contested, "neighborhood stability" was a product of the Board's decision and not a prerequisite to it.

With respect to applications for amendments to the zoning map, the Zoning Regulations do not delineate what factors are to be considered by the Commission, thus distinguishing this case from *Dietrich*. Nor were the material issues defined in the proceedings below, since the parties to this action, not agreeing on what issues below were material, did not present to the Commission all of the issues now claimed to be material by petitioner. Therefore, we must determine what are the material issues before us. *See Citizens Ass'n of Georgetown, Inc. v. Zoning Commission*, D.C.App., 402 A.2d 36, 43 n.10 (1979).

On the basis of our review of the record and our evaluation of the adequacy of the factual findings of the Commission, we find that the material issues left for appellate consideration are the Commission's decision regarding (1) the effect the increased density resulting from rowhouse development

will have on the neighborhood and the surrounding area; (2) the impact rezoning will have on traffic along the pertinent stretches of Arizona Avenue, MacArthur Boulevard, and Sherrier Place, Northwest; (3) the impact rezoning will have on neighborhood parking; (4) the feasibility of development under R–1–B zoning; (5) the compatibility of rowhouse development with existing area uses; and (6) the impact rezoning will have on the environment. We proceed to the question of whether the Commission's findings of fact adequately address these issues.

(1) *Parking.* The issue of parking was clearly presented to the Commission by both sides. The testimony of the opponents to the amendment, which was supported by photographic evidence, indicated that a parking problem already existed in the neighborhood, primarily due to the influx of commuter vehicles. Rowhouse development, the witnesses maintained, had the potential of bringing 15 more families into the neighborhood than would the R–1–B development and would seriously exacerbate the parking problem. Proponents of the amendment countered this argument by offering evidence that there would be little or no increase in parking on neighborhood streets because site plans provided for adequate off-street parking. Despite this presentation during the hearing, the Commission made no finding whatsoever on the issue of parking. Respondents ask us to infer that this issue is encompassed in the Commission's findings of fact on the issues of traffic and density. This we cannot do.

In a contested case, whenever an administrative agency fails to make a finding on a material contested issue, this court "cannot properly fill the gap itself by inferring findings on a party's objections through inspection of the record, the agency's other findings, and the ultimate decision." *Citizens Ass'n of Georgetown, Inc. v. Zoning Commission, supra* at 42. Thus we are compelled to remand this case for findings on this issue.

(2) *Traffic.* Petitioners also contend that the Commission's treatment of the is-

sue of "traffic" was fatally defective because it failed to address the concern of opponents to the amendment that traffic along Sherrier Place would increase precipitously as a result of rowhouse development. The record reveals that three findings made by the Commission allude to the issue of "traffic." Finding No. 16 states that "good public transportation [exists] at the subject site [and] . . . is an important factor in achieving the goal of reduced automobile traffic." Finding No. 17 concludes that the proposed development would not adversely impact on existing traffic conditions on either MacArthur Boulevard or Arizona Avenue and, in fact, fewer trips are generated per unit in R–1–B development than in R–3 development. Finally, Finding No. 22 mentions the contention of ANC and other opponents to the amendment that a rezoning would increase traffic. However, the Commission found that any potential adverse impacts that might result from rowhouse development were unlikely to occur.

Clearly, we are not faced with failure to make a finding on a material issue, as was the case with respect to the issue of "parking." Here, the Commission did make several factual findings concerning the overall issue of "traffic," which indicated that good public transportation, aiding the reduction of traffic levels, was provided at the site and that traffic along Arizona Avenue and MacArthur Boulevard, where most of the traffic on Sherrier Place must exit or enter, would not be significantly increased. Although the Commission might well have made a specific finding as to traffic on Sherrier Place, the findings made on "traffic" generally were "sufficiently detailed so as to provide this court with the 'basic [and] underlying' reasons for the conclusions [of law] entered" by the Commission in support of its final decision. *Wheeler v. Board of Zoning Adjustment, supra* at 88, quoting *Palmer v. Board of Zoning Adjustment,* D.C.App., 287 A.2d 535, 538 (1972).

(3) *The Other Material Issues.* We deem the Commission's findings on the other material contested issues to be sufficient. Findings Nos. 2, 4, 6, 14, and 22 touched on

aspects of the density issue and clearly demonstrate the Commission recognized that rowhouse development would result in increased density but it nevertheless concluded that the increase would not cause significant environmental or traffic problems or be in conflict with the character of the neighborhood.

Feasibility of development under R–1–B zoning was specifically discussed by the Commission in Finding No. 8. There, the Commission concluded that R–1–B development was infeasible due to prohibitive costs and topographical difficulties.[2] The Commission also discussed the related issue of the feasibility of rowhouse development in Findings Nos. 7, 10, and 11. In those findings the Commission concluded that rowhouse development would be more practical and marketable than R–1–B development.

The issue of compatibility with existing uses was explicitly discussed by the Commission in Findings Nos. 4, 9, 12, and 13.

The final material issue of adverse environmental impact was directly covered in Finding No. 22, where the Commission determined that such adverse conditions were unlikely to occur.

B. *The "Rational Connection" Requirement.*

Petitioner next asserts that no "rational connection" exists between the Commission's findings of fact and its conclusions of law because the conclusions merely echo statutory language and are without rational support from the findings. We disagree.

■ As we noted in a recent decision, administrative agencies often express their conclusions of law in terms of statutory criteria. *Georgetown Citizens Association v. Zoning Commission, supra* at 42. This practice need not be considered unacceptable, unless the agency also fails to make adequate findings on the material contested issues. *Id.* For example, in *Dietrich v.*

Board of Zoning Adjustment, supra, we found that the BZA had failed to satisfy the "rational connection" requirement because it had merely summarized the testimony of witnesses without stating its findings and setting forth both its factual findings and legal conclusion in statutory language. *See also Brewington v. Board of Appeals & Review, supra.* We have already determined that, with the exception of the issue of "parking," the Commission's findings of fact sufficiently addressed the material contested issues. The "rational connection" requirement has not been violated simply because the Commission's conclusions of law are couched in terms of the applicable statutes.

When the findings of fact adequately discuss material contested issues, appellate review focuses on the "rational" half of the "rational connection" requirement. We ask whether the legal conclusions flow logically from the factual findings. In this case they do, except for the lack of a finding on parking. The pertinent findings of fact made by the Commission may be fairly summarized as follows:

(1) Lots 806 and 807 were never developed under the R–1–B zoning classification; (2) For economic reasons, caused in part by topographical conditions at the site, rowhouse (R–3) construction was economically feasible while R–1–B construction was not; (3) Rowhouse (R–3) development will provide more affordable, quality housing than would R–1–B construction, and will create increased tax revenues for the city; (4) Rowhouse development is compatible with other area uses, which include commercial establishments, and will buffer that portion of the R–1–B district which remains from both traffic and the nearby commercial districts; (5) Little or no adverse environmental or traffic impacts would result from rowhouse (R–3) construction.

**2.** By recognizing that feasibility of development under existing zoning was a material issue, we do not mean to intimate that it was necessary for the Commission to find that such development was infeasible before it could grant the

amendment in this case. This jurisdiction does not subscribe to this "change-mistake" doctrine. *See Rock Creek East Neighborhood League, Inc. v. Zoning Comm'n,* D.C.App., 388 A.2d 450, 451 (1978).

Except for there not being a finding on parking, these findings otherwise logically support the legal conclusions reached by the Commission, namely, that (a) R–3 development is consistent with the purposes of zoning, such as the promotion of conditions favorable to the health, safety, and welfare of the community; (b) R–3 construction is appropriate at the subject site; (c) R–1–B zoning is not a reasonable restriction on the land, while R–3 zoning is; (d) Rezoning will promote orderly development.

### C. *Sufficiency of the Evidence.*

Petitioners' final attack on the "substantial evidence" requirement is the assertion that the factual findings are not supported by sufficient evidence in the record. After examining the record, we find this argument to be unpersuasive. However, a short discussion regarding the evidence in support of the Commission's findings on the issue of "traffic" may be in order.

As we noted earlier in this opinion, the Commission made no specific finding with regard to the question of increased traffic on Sherrier Place. We concluded that the defect was immaterial because the Commission made other findings on the larger issue of traffic, which encompasses the question of traffic increase on Sherrier Place. Petitioners now assert that not only was there no finding with regard to traffic on Sherrier Place, but also there is no evidence to support a finding that the increase in traffic along Sherrier would be minimal. They substantiate this argument by citing that portion of the DOT testimony which states that that department had not taken any traffic counts on Sherrier Place. We note, however, that the DOT testimony also included projections which indicate that rowhouse development would generate a traffic increase of only one more trip along Sherrier Place every 2.4 minutes, even assuming that no rowhouse tenant would use public transportation or shop at the stores within walking distance. This testimony provided sufficient evidence to support the finding that there would be no adverse traffic impacts on Sherrier Place.

### III. SPOT ZONING

Petitioners argue that the Commission's order in this case constitutes "spot zoning," because the rezoning is not in accordance with the District of Columbia's comprehensive plan, is primarily for the benefit of the applicant-intervenor, and in reality does not promote a substantial public purpose. This argument is unpersuasive.

The term "spot zoning" has been inconsistently defined by the courts and commentators alike. *See generally* 1 A. Rathkopt, *The Law of Zoning and Planning* § 26.02 (1978). However, when deciding whether to apply the label to a particular zoning decision, courts universally agree that certain consequences of zoning decisions are indicative of "spot zoning." Thus, courts invalidate zoning decisions which are inconsistent with a municipality's comprehensive plan (*see* 1 R. Anderson, *American Law of Zoning* § 5.04 (1968)); which involve small parcels of land (*Reskin v. Northlake,* 55 Ill.App.2d 184, 204 N.E.2d 600 (1965)); and, which benefit the owner of the land but do not benefit the public at large (*Wallington Home Owners Ass'n v. Borough of Wallington,* 130 N.J.Super. 461, 327 A.2d 669 (1974); *Rodgers v. Village of Tarrytown,* 302 N.Y. 115, 96 N.E.2d 731 (1951)). In a recent decision of this court, addressing a claim that an order of the Zoning Commission constituted "spot zoning," we formulated a working definition for the term. We stated:

> To constitute illegal spot zoning, the Commission's action (1) must pertain to a single parcel or a limited area—ordinarily for the benefit of a particular property owner or specially interested party—and (2) must be inconsistent with the city's comprehensive plan, or if there is none, with the character and zoning of the surrounding area, or the purpose of zoning regulation, *i. e.,* the public health, safety, and general welfare. [*Citizens Ass'n of Georgetown, Inc. v. Zoning Comm'n,* D.C. App., 402 A.2d 36, 39–40 (1979).]

 As we have noted, this jurisdiction has no comprehensive plan. *Id.* at 5; *see*

also *Citizens Ass'n of Georgetown v. Zoning Commission*, D.C.App., 392 A.2d 1027 (1978) (en banc). Until such a plan is formulated, zoning which is " 'on a uniform and comprehensive basis' " will suffice. *Id.* at 1036 (citation omitted). Although this court has not had occasion to delineate completely what constitutes zoning "on a uniform and comprehensive basis," courts in other jurisdictions do not find "spot zoning" when the action of zoning authorities serves the public health, safety, or welfare. *See* 1 R. Anderson § 5.02. For example, zoning decisions which allow the erection of apartments in districts previously classified for construction of detached residential dwellings only are not disturbed by appellate courts when a need for housing exists and injury to the land is minimal. *See DeMeo v. Zoning Commission*, 148 Conn. 68, 167 A.2d 454 (1961); *Hedin v. Board of County Commissioners*, 209 Md. 224, 120 A.2d 663 (1956). The courts of the District of Columbia have taken judicial notice of the housing shortage in the city. *William J. Davis, Inc. v. Slade*, D.C.App., 271 A.2d 412, 415 (1970); *Edwards v. Habib*, 130 U.S.App.D.C. 125, 140, 397 F.2d 687, 701 (1968), *cert. denied*, 393 U.S. 1016, 89 S.Ct. 618, 21 L.Ed.2d 560 (1969). The Commission's findings support a conclusion that its order promotes a substantial public purpose. Finding No. 20 in particular treats with this problem and there is substantial evidence in the record to support such findings. The Commission's order does not constitute "spot zoning."

## IV. THE ADVISORY NEIGHBORHOOD COMMISSION

■ Petitioners' last contention is that the Commission failed to give "great weight" to the issues and concerns of ANC, as D.C.Code 1978 Supp., § 1–171i(d) requires. Again, we disagree.

Section 1–171i(d) provides in pertinent part:

> Each [Advisory Neighborhood] Commission so notified . . . shall forward its written recommendations . . [to] the appropriate agency . . . . The issues and concerns raised in the

recommendations of the Commission shall be given great weight during the deliberations by the governmental agency and those issues shall be discussed in the written rationale for the governmental decision taken.

In *Kopff v. D.C. Alcoholic Beverage Control Board*, D.C.App., 381 A.2d 1372 (1977), this court, interpreting the "great weight" provision of the statute, imposed a strict requirement that the agency

> elaborate, with precision, its response to the ANC issues and concerns. . . . to deal with it in detail, without slippage. . . . That is, the agency must articulate why the particular ANC . . . does not—offer persuasive advice under the circumstances. [*Id.* at 1384.]

Petitioners urge us to overturn the Commission's order because it does not meet with the *Kopff* standard. However, as we recently held in *Wheeler v. Board of Zoning Adjustment, supra* at 91, the *Kopff* standard does not apply to administrative determinations rendered by agencies prior to our decision in *Kopff*. In that opinion, we went on to say that we will not reverse agency determinations made pre-*Kopff* "if the record reveals that the agency was cognizant of and paid attention to the pertinent and specific neighborhood issues and concerns raised by the ANC's." *Id.* at 91. The pre-*Kopff* standard applies here since the Commission's order in this case was handed down prior to this court's decision in *Kopff*.

Since we have affirmed the ruling of the Commission, except for the failure to make a finding on the issue of parking, we remand this case for that reason alone.

*So Ordered.*