The **WASHINGTON ETHICAL SOCIETY**
et al., Petitioners,

v.

**DISTRICT OF COLUMBIA BOARD OF
ZONING ADJUSTMENT, Respondent.**

No. 10999.

District of Columbia Court of Appeals.

Argued Jan. 26, 1978.

Decided Sept. 23, 1980.

Whayne S. Quin, Washington, D. C., with whom Norman M. Glasglow and Iverson O. Mitchell, III, Washington, D. C., were on brief, for petitioners.

Margaret L. Hines, Asst. Corp. Counsel, Washington, D. C., with whom John R. Risher, Jr., Corp. Counsel, Washington, D. C., at the time the case was argued, and Richard W. Barton, Deputy Corp. Counsel, Washington, D. C., at the time the case was argued, were on brief, for respondent.

Before NEBEKER and FERREN, Associate Judges, and BACON, Associate Judge, Superior Court of the District of Columbia.*

BACON, Associate Judge:

This is a petition for review of an order of the District of Columbia Board of Zoning Adjustment denying a special exception for an increased enrollment at a private school. The dispositive issues are the adequacy of the Board findings and the correctness of its conclusions.

After applying the principles of law discussed in *Citizens Association of Georgetown, Inc. v. District of Columbia Zoning Commission*, D.C.App., 402 A.2d 36 (1979), we reverse and remand. The decision is not "based on express factual findings which articulate with certainty and clarity the basis for the decision." *Dupont Circle Citizens Association v. District of Columbia Board of Zoning Adjustment*, D.C.App., 390 A.2d 1009, 1011 (1978). The Board's conclusions are not "supported by and in accordance with the reliable, probative and substantial evidence." District of Columbia Administrative Procedure Act, D.C.Code 1978 Supp., § 1–1509(e).

The property in issue is located at 7750–16th Street, Northwest, in a residential area zoned R–1–A. Since 1968, the two–story structure located on that property has been used by petitioners, the Washington Ethical Society and the Washington Ethical Society School, as a high school. They have a certificate of occupancy for 40 full–time students and an actual enrollment of 65 students. They plan to increase the enrollment to 80 full–time students, but no expansion of the school building is required.

Without waiving their claims to an increase in the enrollment as a matter of right,[1] petitioners filed an application with the Board of Zoning Adjustment for special exception as a private school. As a private school, petitioners must establish (a) that the school is "not likely to become objectionable to adjoining or nearby property because of noise, traffic, number of students or otherwise objectionable conditions," and (b) that there is "ample parking space." Zoning Regulations § 3101.42.

The Board gave due notice of petitioners' application and a public hearing was held. Support for the application was presented by an environmental planner, the headmaster of the school, and some area residents. The Municipal Planning Office recommended approval of the increased enrollment. Opposition was presented by area residents and by a representative of the Shepherd Park Citizens Association.

In reaching its decision, the Board made 15 findings of fact. By a vote of 4 to 0, it concluded that an expanded enrollment at the school would adversely impact on the surrounding property by "increasing noise, litter, traffic and other adverse impacts" and would prevent the neighborhood from enjoying the benefits of a single–family area in harmony with an R–1–A zoning. Petitioners' claims as a church school were not addressed.

■ Review of the Board's decision issue by issue reveals its inadequacy. Few of the findings address the contested issues or set forth "basic" and "underlying" facts on those issues. Further, nowhere in the record is there a rational basis for the Board's conclusion that the addition of 15 students would cause the school to become objectionable and inconsistent with R–1–A zoning.

■ 1. *Noise and Traffic*: A private school seeking a special exception to the Zoning Regulations must show that the proposed use of its property will not become objectionable to adjoining or nearby property because of noise and traffic.

In making its findings on these issues, the Board primarily summarizes the testimony and draws unreasoned conclusions of ulti-

---

* Sitting by designation pursuant to D.C.Code 1973, § 11–707(a).

1. Petitioners assert that because their school is a church–related school located on church property, they are entitled to increase its enroll-

ment without approval of the Board of Zoning Adjustment. They argue that the law requires a distinction between church–related schools and other private schools. *Infra*, pp. 17–18.

mate fact. For example, in finding number 9, there are 3 sentences summarizing the testimony of 1 of the expert witnesses and 1 sentence concluding that lay testimony "adequately refuted" the expert testimony. In finding number 11, the Board merely notes that testimony was offered on each side of the issue.

There are no findings of fact of a "basic or underlying nature" about the future impact of an increased student body on noise and traffic in the Shepherd Park area. *Palmer v. District of Columbia Board of Zoning Adjustment*, D.C.App., 287 A.2d 535, 538 (1972). The Board's findings are "[g]eneralized, conclusory (and) incomplete." *Dietrich v. District of Columbia Board of Zoning Adjustment*, D.C.App., 293 A.2d 470, 473 (1972). They appear to be based on lay observations of current conditions, not future impact, and on testimony of witnesses who often could not distinguish between conditions attributable to petitioners' students and conditions attributable to the nearby junior college or to the local elementary school or to other citizens' activities.[2]

Further, the Board, without statement of reasons, rejects unimpeached, expert testimony on the impact of 15 additional students on noise and traffic levels and rejects the expert recommendations of the Municipal Planning Office. Although an "agency is not legally required to explain ... why it favored one witness or one statistic over another", this case falls within the circumstances contemplated in *Citizens Association, supra*, 402 A.2d at 47 n.19 & 20. When lay testimony is so weak in contrast with other evidence, an agency must be guided by the language in *Shay v. District of Columbia Board of Zoning Adjustment*, D.C. App., 334 A.2d 175, 178 n.10 (1975):

> While agencies are not always bound to accept expert testimony over lay testimony, *see Marjorie Webster Jun. C., I. v. District of Col. B. of Z. A.*, D.C.App., 309

A.2d 314, 319 (1973), the opinions of qualified experts are not to be lightly disregarded and the probative value of lay opinions is often doubtful. *See, e. g., Goldstein v. Zoning Board of Review, City of Warwick*, 101 R.I. 728, 227 A.2d 195 (R.I.1967). In any event, some indication in the findings as to the reasons for rejecting the expert testimony in favor of that of lay witnesses was certainly required if judicial review is to be meaningful.

In sum, the Board's findings on the issues of noise and traffic are inadequate and not supported by the record. They are as deficient as the findings which were rejected in *Citizens Association of Georgetown, Inc. v. District of Columbia Board of Zoning Adjustment*, D.C.App., 365 A.2d 372, 375 (1976). They contrast sharply with those found adequate in *Citizens Association of Georgetown, Inc. v. District of Columbia Board of Zoning Adjustment*, D.C.App., 403 A.2d 737, 741 (1979).

■ 2. *Number of Students*: Although the Board finds that petitioners' school now has 65 students and that the school exceeds its occupancy certificate by 25 students, the finding is in limbo. Nowhere in the record is there any evidence which distinguishes the impact of 40 students from the impact of 65 students or 80 students. There is no indication of whether the Board found adverse effects attributable to the 25 students who exceed the current occupancy certificate or to the 15 who might be added.

■ 3. *Other Objectionable Conditions*: The Board's findings on student activities in the neighborhood, lunch facilities and matters of litter, trash and vandalism are primarily summaries of testimony. From these summaries of testimony on current conditions, the Board concludes in finding number 15 that the problems would be magnified if petitioners' application were granted.

---

**2.** *E. g.*: Witnesses noted potholes in the road and traffic congestion in the alley, but could not determine if the conditions were caused by cars belonging to petitioners' students. Even the Board itself failed to make proper distinc-

tions when it apparently relied on a finding that church functions create adverse traffic and parking conditions in the evening hours when the primary issue was future impact of school functions during school hours.

**18**

The record, however, does not support the conclusion. It does not reveal "evidence sufficient to convince reasonable minds of its adequacy." *Citizens Association, supra*, 402 A.2d at 42. Many of the witnesses on whom the Board relied could not attribute the present problems to petitioners' students. Little of the testimony was couched in terms of future impact on noise, litter or other adverse conditions. *Citizens Association, supra*, 365 A.2d at 375. Further, the record reveals substantial expert testimony including information from the Municipal Planning Office which, in an exercise of its expert judgment, recommended approval of the application after considering location, number of students, projected transportation patterns and uses of the surrounding areas.

■ 4. *Parking Spaces*: In order to obtain a special exception to the Zoning Regulations, a private school must provide "ample parking space." There is no definition of what constitutes an ample number of spaces but under § 7202.1 of the Zoning Regulations, a school with 80 students and 13 adults must provide a minimum of 8 parking spaces.

In its decision, the Board outlines petitioners' plan to provide 12 to 13 parking spaces on the school property and 10 more parking spaces at an off–site location. Nowhere, however, does the Board take cognizance of the 8 space minimum or state that the proposed 22 to 23 parking spaces are not ample. It merely hints at some inadequacy by suggesting that petitioners offer no covenant to guarantee the 10 off–site parking spaces.

On this material contested issue, the Board simply fails to make the findings and conclusions required by the Administrative Procedure Act as interpreted in *Citizens Association, supra*, 402 A.2d at 40. Further, the Board does not consider its authority to require a covenant for off–site parking as a condition for granting the exception if 22 spaces are required.

5. *Claims as a Church–Related School*: Petitioners contend that a school which is operated or sponsored by a religious organization is a land use permitted as of right in an R–1–A area. They rely on §§ 3101.32 and 3101.56 of the Zoning Regulations, the Constitution of the United States, and the decisions of other jurisdictions.

■ Although the Board finds that petitioners' school is church sponsored, it does not address the issues raised by that finding. Rather, it proceeds as if petitioners' sole claim was made as a private school under § 3101.42. Thus, no reference is made to Board policy or interpretation which might be entitled to deference under *Udall v. Tallman*, 380 U.S. 1, 17, 85 S.Ct. 792, 802, 13 L.Ed.2d 616 (1964). Neither is there any indication of Board policy on the distinctions which petitioners seek to draw between themselves and petitioners in cases such as *Robey v. Schwab*, 113 U.S.App.D.C. 241, 307 F.2d 198 (1962) and *Rose Lees Hardy Home v. District of Columbia Board of Zoning Adjustment*, D.C.App., 343 A.2d 564 (1975).

The Board may be of the view that petitioners' claims as a church–related school are without merit, that there are no distinctions between petitioners and others, and that Constitutional issues have been decided adversely under principles announced in *Marjorie Webster Junior College, Inc. v. District of Columbia Board of Zoning Adjustment*, D.C.App., 309 A.2d 314, 319 (1973). Nonetheless, a decision by the Board on this contested issue would appear appropriate.

In remanding this case to the District of Columbia Board of Zoning Adjustment, attention is called to the applicable law on special exceptions as set forth in *Stewart v. District of Columbia Board of Zoning Adjustment*, D.C.App., 305 A.2d 516, 518 (1973):

Special exceptions, unlike variances, are expressly provided for in the Zoning Regulations. The Board's discretion to grant special exceptions is limited to a determination whether the exception sought meets the requirements of the regulation. The burden of showing that the proposal meets the prerequisite enu-

merated in the particular regulation pursuant to which the exception is sought rests with the applicant. In sum, the applicant must make the requisite showing, and once he has, the Board ordinarily must grant his application.

The court, however, cannot find facts from the record either to fill gaps or to revise a decision which is based on erroneous findings. *Lee v. District of Columbia Zoning Commission*, D.C.App., 411 A.2d 635, 639 (1980), and *Citizens Association, supra*, 403 A.2d at 741. The proper disposition must be a remand. However, "[s]uch remand is not solely for the purpose of redrafting findings and conclusions to facilitate our review and reinforce the Board's decision. The Board may ... conduct further hearings or ... even reach a different result." *Salsbery v. District of Columbia Board of Zoning Adjustment*, D.C.App., 318 A.2d 894, 898 (1974).

*Reversed and remanded.*