Theresa BRADDOCK, Petitioner,

v.

Franklin L. SMITH, et al., Respondents.

No. 96–AA–1511.

District of Columbia Court of Appeals.

Argued Jan. 13, 1998.

Decided May 14, 1998.

Travis A. Murrell, Washington, DC, for petitioner.

Sheila Kaplan, Assistant Corporation Counsel, with whom Jo Anne Robinson, Acting Corporation Counsel, and Charles L. Reischel, Deputy Corporation Counsel, were on the brief, for respondents.

Before STEADMAN, SCHWELB and FARRELL, Associate Judges.

STEADMAN, Associate Judge:

Petitioner Theresa Braddock seeks review of a decision by the District of Columbia Public Schools ("DCPS") that she owed $10,-318 in nonresident tuition for the 1994–95 and 1995–96 school years on account of her son's attendance at Anne Beers Elementary School in the District during that period. Petitioner maintained that she and her son lived with her parents in the District during that period of time and, hence, did not owe nonresident tuition. Because of a deficiency in the hearing officer's findings of fact, which may create uncertainty with respect to the agency's ultimate legal position as well, and because the DCPS failed to follow its own rules relating to prehearing notice to petitioner which redounded to her prejudice, we must remand the case for further proceedings not inconsistent with this opinion.

I.

D.C.Code § 31–602 (1993) provides that nonresident tuition must be paid for each child who attends a public school in the District of Columbia and does not have a parent or guardian who "resides" in the District, unless the child is an orphan or obtains a special exemption. *See also* 5 DCMR § 2000.2 (1997).[1] The statute itself does not define "residency," but a Board of Education regulation lists several non-exclusive factors, or indicia of residency, to help guide the inquiry. 5 DCMR § 2002.11 (1997).[2] *See also Robinson v. Smith*, 683 A.2d 481, 488 (D.C.1996) (residency factors of § 2002.11 are "administrative guide[s]"). Another regulation sets forth in detail the procedures for the "Review of Contested Residency Cases," including the right to a formal hearing on the issue. *See* 5 DCMR § 2009 (1997).

At petitioner's request, such a residency hearing before a hearing officer was conduct-

1. Neither the statute nor the regulation specifically states that the child must live within the District. The regulation does provide that the student be "in the custody or control of a parent or court-appointed guardian (or custodian) who is a resident of the District of Columbia." 5 DCMR § 2000.2(a); *see also* 5 DCMR § 2099.1 (1997) ("Residence of a minor student"). The exact interrelationship of these factors is not at issue here since petitioner claims that both she and the child lived in the District.

2. Evidence of District residency may include, but is not necessarily limited to, the following:

    (a) Proof of payment of D.C. personal income tax;

    (b) Title to residential property in the District of Columbia, or valid, unexpired lease agreement or receipts for payment of rent on a D.C. residence in which the applicant actually resides;

    (c) A valid, unexpired D.C. Motor Vehicle Operators Permit, or a D.C. Motor Vehicle Registration;

    (d) Maintenance of D.C. voter registration;

    (e) Maintenance of a bank account(s) or local credit account(s) in the District of Columbia; and

    (f) Membership in a church or other local organization operating in the District of Columbia.

5 DCMR § 2002.11 (1997).

ed in her case on September 6, 1996.[3] At the hearing, Lawrence Crawford, appearing on behalf of the Office of Educational Accountability's Nonresident Tuition Enforcement Branch (of which he was the acting director), attempted to demonstrate petitioner's nonresident status based on the following evidence: (1) she and her husband have owned a home in Capitol Heights, Maryland since September 19, 1993; (2) she received mail, including credit card bills, at this Maryland address during the period she claims to have been a District resident; (3) she paid Maryland income taxes and listed her Maryland address on her tax returns;[4] (4) she listed the Maryland address as her residence with her Virginia employer; (5) since purchasing the Maryland property in 1993, she has not voted in the District of Columbia; and (6) her son was observed being dropped off at school in the District by a car bearing Maryland license tags registered to her husband at the Maryland address. Additionally, Mr. Crawford asserted that a DCPS investigator had interviewed a neighbor of petitioner's parents in September 1996, who reported that the only people residing at the parents' home were the parents themselves and that the children, including petitioner, had moved out "sometime [sic] ago."

In opposition, petitioner held steadfast to her testimony that she had relocated with her son from Maryland to her parents' home in the District because of marital problems. In support of this claim, she produced a utility bill jointly addressed to her and her father at that residence and a District of Columbia driver's license and voter registration card. Additionally, she testified that she maintained a checking account with the D.C. Federal Credit Union and listed her parents' District address on the checks.

Through her testimony, petitioner also attempted to explain away the DCPS evidence. First, she challenged the DCPS's information that she and her husband had purchased the Maryland property in September 1993, noting that, in fact, it had been purchased in February 1993. She stated that she and her son moved back in with her parents in the summer of 1993, but continued to make mortgage payments on the property because she and her husband had only effected an informal separation, not a divorce.[5] Second, when questioned by the hearing officer as to why, despite her alleged move back to the District, she continued to have Maryland taxes deducted from her salary, she explained, "I had purchased a house, I had property in Maryland.... I was told that you couldn't pay taxes in both places." Finally, accounting for the presence of her husband's automobile at the school, she testified that her husband usually transported their son to and from school on Tuesdays and Thursdays, his days of visitation, or on days when the child had medical appointments.

In a written order dated September 9, 1996, the hearing officer concluded that the "DCPS proved, by a preponderance of the evidence, that the parents of Kevin Braddock II owe DCPS nonresident tuition for Kevin's attendance at Anne Beers ES for school years 1994–95 and 1995–96," and, more specifically, that "the sum of $10,318.00 is owed DCPS for Kevin's attendance at Anne Beers ES for school years 1994–95 and 1995–96."

Pursuant to the regulations, petitioner appealed the adverse decision to the Superintendent of Schools. 5 DCMR § 2009.14. By letter dated October 2, 1996, the Superintendent stated that he found "no basis upon which to justify overruling the hearing officer's decision." Petitioner thereupon filed a petition for review with this court under our

---

3. The hearing arose as a result of a notification that petitioner's son would be barred from continuing enrollment in District schools as a nonresident unless the back-due nonresident tuition was paid. *See* 5 DCMR §§ 2007.1, 2007.4, 2009.9 (1997). The regulations are unclear on whether a newly *resident* student would be so barred because of past nonresident attendance in District schools without payment of nonresident tuition. *See, e.g.,* 5 DCMR § 2009.9.

4. Petitioner testified that she completed an amended tax form to begin paying District of Columbia income taxes on September 5, 1996, the day before the hearing.

5. Petitioner did admit that she intended to return to Maryland and live with her husband once their marital problems were resolved. We were informed at oral argument that this has, in fact, now occurred.

"contested case" jurisdiction. D.C.Code § 1–1510(a) (1992).

## II.

▉▉ Under the District of Columbia Administrative Procedure Act,

> [e]very decision and order adverse to a party to the case, rendered by the Mayor or an agency in a contested case, shall be in writing and shall be accompanied by findings of fact and conclusions of law. The findings of fact shall consist of a concise statement of the conclusions upon each contested issue of fact.

D.C.Code § 1–1509(e) (1992). A mere summary of the evidence will not satisfy these requirements. *Hedgman v. District of Columbia Hackers' License Appeal Bd.*, 549 A.2d 720, 723 (D.C.1988). As we remarked more than twenty years ago,

> This court has admonished administrative agencies on several occasions that a reiteration of the evidence is not a finding of fact. Neither will generalized, conclusory or incomplete findings suffice. There must be a finding on each material fact necessary to support the conclusions of law. . . .
> .[W]e will continue to order that administrative agencies specify the precise findings and conclusions which support their decisions.

*Newsweek Magazine v. District of Columbia Comm'n on Human Rights*, 376 A.2d 777, 784 (D.C.1977) (citation and internal quotation marks omitted). It is our function to assure that the "agency has given full and reasoned consideration to all material facts and issues." *Eilers v. District of Columbia Bureau of Motor Vehicles Servs.*, 583 A.2d 677, 686 (D.C.1990) (quoting *Dietrich v. District of Columbia Bd. of Zoning Adjustment*, 293 A.2d 470, 473 (D.C.1972)). The agency must "disclose[ ] the basis of its order by an articulation with reasonable clarity of its reasons for the decision." *Id.* (quoting *Dietrich, supra*, 293 A.2d at 473).

We need not decide whether the facts presented at the September 6, 1996, hearing would be sufficient to support a determination of nonresidency despite the contrary claim by a parent or guardian that he or she resides in the District.[6] *See Robinson, supra*, 683 A.2d at 487–88; 5 DCMR § 2002.11 (1995). Presumably, however, the decisive factor in the ordinary case, as was true in *Robinson*, is that the hearing officer discredits the testimony of the parent or concludes as a legal matter that, even if believed, the parent's story somehow falls short of the statutory requirement of residency. In this case, we are unclear as to the basis of the decision.

▉▉ Here, the hearing officer issued a report entitled "Non-resident Tuition Hearing Determination," in which he summarized, at some length, the evidence and testimony presented at the hearing, made six "Findings of Fact," and set forth his conclusions. However, the hearing officer did not indicate, either explicitly or implicitly, whether he credited or discredited petitioner's testimony that she lived with her parents in the District.[7] Such

---

6. We do observe that the record is unclear as to the agency's view on the issue of burden of proof. In one portion of the hearing officer's opinion, quoted above, he stated that the agency had proved "by a preponderance of the evidence" that the parents owed nonresident tuition. On the other hand, he also noted that the petitioner's evidence was "insufficient to establish her D.C. residency." The Superintendent, in his letter rejecting petitioner's appeal, flatly stated that "[t]he burden of proof is upon the student (or his representative) to establish that no tuition is due."

D.C.Code § 1–1509(b) states that except as may be otherwise provided by law, "the proponent of a rule or order shall have the burden of proof." Additionally, D.C.Code § 31–603(c) (1993) provides that "[a]ll *prosecutions* for violations of" § 31–602, the statute requiring payment of nonresident tuition, be conducted by the Corporation Counsel. (Emphasis added). It is at least arguable that while the parent may be the "proponent" where the hearing is to determine the parent's *present* residency status for purposes of deciding whether the child may enroll at a District school, the District is the "proponent" when the effort is to establish the parent's liability for allegedly *past-due* nonresident tuition. We leave it to the agency, on remand, to address this issue in the first instance.

7. In fact, at one point during the proceedings the hearing examiner and Mr. Crawford actually credited petitioner's testimony. The following colloquy took place after petitioner testified that she had candidly filled out a student enrollment form for her son to indicate that she lived in the District and her husband in Maryland:

testimony was the critical evidence opposing that offered by Mr. Crawford to prove her nonresidency status. We think this omission mandates a remand.

The credibility of petitioner's testimony affects our review of the issue of evidentiary sufficiency. Furthermore, it may impact upon the ultimate legal question of statutory interpretation. Defining residency, as we have noted in other contexts, *Lawrence v. District of Columbia Bd. of Elections & Ethics*, 611 A.2d 529, 533 (D.C.1992) (quoting *District of Columbia v. H.J.B.*, 359 A.2d 285, 290 (D.C.1976)), can be a challenging task, having both factual and legal elements. The hearing officer, in his "Determination and Rationale," made particular mention that "Mrs. Braddock noted that once marital problems are resolved she plans to continue living at her Maryland address." See note 5, *supra*. We cannot rule out the possibility that the hearing officer concluded that even if petitioner's testimony were true, the indicia of ties to Maryland were sufficient to establish her "residence" in that state as a matter of law, a legal position that would require close examination.

The present case is distinguishable from our recent decision in *Robinson*. In that case, where the hearing examiner similarly concluded that the petitioner "resided at [a] Maryland address," we were satisfied that the petitioner's claim of District residency had been considered and dismissed:

> It is readily apparent from the hearing examiner's statements that inconsistencies in petitioner's story led her to credit DCPS's evidence that petitioner resided at

Ms. Braddock: Now, he has been going to school for two years there and there's been no problem, you know, with proof of residency, you know. And I just—I just kind of like feel it confusing that I filled the form out the way it's supposed to have been filled out, honestly—
Mr. Crawford: Right. I understand that.
Ms. Braddock:—yes, his father does live in the State of Maryland.
Hearing Officer Cook: Yes. I don't see any problems with that.
Mr. Crawford: Right. You were honest with that.

8. While a hearing examiner need not always explain why he favored one witness's testimony

the Maryland address over petitioner's evidence that he resided [in the District]. 683 A.2d at 486. We further observed that "the essence of the hearing examiner's statements is that there were inconsistencies in petitioner's story." *Id.* at 486 n. 4. Here, in contrast, we are unable to discern the essence of the nonresidency determination, as neither the findings nor the statements made on the record reveal the hearing officer's perception of petitioner's credibility.[8]

With the case before us in this posture, we must conclude that the record is insufficient to permit dispositive appellate review. *Hedgman, supra*, 549 A.2d at 723 (insufficient findings deprive reviewing court of a "basis for determining whether the conclusions of law followed rationally from the findings ..."); *Nursing Servs., Inc. v. District of Columbia Dep't of Employment Servs.*, 512 A.2d 301, 303 (D.C.1986). Ordinarily, that would mean that we remand solely for the agency to make the necessary findings on the record as constituted. But in this case, for the reasons we now state, that remedy is insufficient.

### III.

■ Petitioner also argues for reversal on the grounds that the hearing officer relied improperly on hearsay evidence, and that the DCPS failed to apprise her of her procedural rights connected with the nonresident tuition hearing, as required by 5 DCMR § 2009, including her right to counsel. These two arguments interrelate in determining whether DCPS should afford petitioner a new hearing upon remand.[9]

over another, *Eilers, supra*, 583 A.2d at 684, a credibility determination must at least be discernible from the face of the administrative decision. We acknowledge that this is a close case, and that at various points in the record there are hints that the hearing officer does not fully credit petitioner's story. However, in the absence of a finding, or the ability to infer one, we are compelled to remand.

9. If the original hearing examiner were no longer available, a new hearing would be required in any event because of the credibility determination that must be made.

## A.

■ First, as to the hearsay testimony, there is no general bar to the use of such evidence at a nonresidency hearing. D.C.Code § 1–1509(b) (1992); 5 DCMR § 2009.12(b) (1997); *Robinson, supra,* 683 A.2d at 488–89. However, it is worth noting that the hearsay here, unlike the case in *Robinson,* was not presented through the testimony of the DCPS investigator. Instead, it was yet one more step removed, coming from Mr. Crawford. Obviously, the usefulness of cross-examination was markedly reduced by such a third-hand presentation.[10] The testimony relating to the investigator's report appears to have been a considerable objective evidentiary feature bearing on the veracity of petitioner's testimony as to her actual living arrangements during the disputed period, yet the weight to be given to such remote hearsay testimony could be brought into question. *See Robinson, supra,* 683 A.2d at 488–89. *See generally* 4 JACOB A. STEIN ET AL., ADMINISTRATIVE LAW § 26.02 (1998) ("The Weight of Hearsay Evidence"); 6 JACOB A. STEIN ET AL., ADMINISTRATIVE LAW § 51.02 (1998) ("Substantial Evidence"). There was no indication that the DCPS investigator was not available or that it would have been particularly burdensome to have called him. Finally, in violation of the DCPS's own rules, none of the witnesses at the hearing was sworn, so that even the person presenting the hearsay testimony was not under oath. See 5 DCMR § 2009.12(c) ("The testimony given at the hearing shall be under oath or affirmation"); *Harrison v. District of Columbia Dep't of Human Servs.,* 472 A.2d 405, 406 (D.C.1984); *Dietrich, supra,* 293 A.2d at 474. The foregoing considerations could have been brought to the attention of the hearing officer by a competent attorney representing petitioner, a point that brings us to the failure of the DCPS to follow its own rules and regulations.

## B.

As we noted at some length in *Robinson,* Board of Education regulations require that upon request for review of a contested residency case, the DCPS shall give the claimant written notice of her right to a formal hearing that contains "notice of all the rights set forth in § 2009.11 and the procedures to be followed during the hearing process, as set forth in § 2009.12." 5 DCMR § 2009.10. Included among the rights set forth in § 2009.11 are the rights to counsel and to have that counsel present evidence and cross-examine witnesses. Moreover, § 2009.12 provides that although the rules of evidence shall not be strictly applied, they "shall be used as guidelines for an orderly hearing," and, as mentioned above, that testimony shall be "under oath or affirmation."[11]

■ "It is a basic tenet of administrative law that an agency is bound to follow its own rules and regulations." *Macauley v. District of Columbia Taxicab Comm'n,* 623 A.2d 1207, 1209 (D.C.1993). "However, failure to do so will not lead to reversal where the petitioner has not been prejudiced by the deviation from required procedures." *Robinson, supra,* 683 A.2d at 490. The question before us, then, is whether we can "perceive [any] prejudice to petitioner to bring into question the fairness of the proceedings so as to warrant a new hearing." *Id.*

In *Robinson,* the petitioner made no claim that he would have hired counsel or that the absence of counsel prejudiced him in any way.[12] Here, on the contrary, petitioner stresses the prejudice she suffered by the

---

**10.** To give an obvious example, cross-examination of the investigator might shed more light on the time frame of the vague assertion that petitioner was said to have moved out "sometime [sic] ago."

**11.** A full recitation of those extensive rights and the required notice thereof as set forth in the DCPS regulations is contained in *Robinson, supra,* 683 A.2d at 490 n. 16.

**12.** The only claim of prejudice that Robinson made regarding the failure of the agency to give him notice of his rights and to otherwise follow its procedures related to the failure to notify him of his right to examine the hearing record prior to the hearing, a right that we concluded he did not in fact have under the regulations.

absence of counsel, in particular that relating to the hearsay evidence discussed above.[13]

It is true that her principal assertion is that counsel could have succeeded in excluding the evidence entirely, an unlikely outcome under the evidentiary rules applying to administrative hearings discussed above. Nonetheless, we think it plain that an attorney, once having focused upon the issue, would have most likely brought up the additional considerations that we have already observed and that it is likely that the agency would have responded thereto in a positive manner that might have affected the outcome of the hearing. Furthermore, at oral argument before us, counsel as an officer of the court asserted, albeit belatedly, that additional evidence existed to support petitioner's testimony which would have been introduced had counsel been present at the hearing.

We expressed our concern in *Robinson*, *supra*, 683 A.2d at 490, (to be sure a decision that postdated the proceedings here) about the "fairly cavalier and hardly commendable attitude towards its obligations to comply with its own explicit procedural regulations relating to residency dispute determinations." While it is understandable that decisions about the immediate *admission* of a student at the beginning of the school year must be expeditiously taken, a determination as to the amount of past-due tuition may be one with significant monetary consequences. The dispute here would be, for example, beyond the jurisdiction of the small claims court and entitle petitioner to a formal trial by jury. Administrative proceedings of this magnitude should reflect the interests at stake.

It is possible that each individual irregularity or deficiency in this proceeding, standing alone, would be insufficient to mandate a new hearing. However, we conclude on the record before us, taken as a whole, that the case should be remanded to the DCPS for a new hearing that will fully comport with its own rules and regulations, and for findings sufficient to cover all disputed relevant facts. D.C.Code § 17–306 (1997).

*So ordered.*

---

13. Petitioner received notice of the hearing examiner's decision on the afternoon of Friday, September 27, 1996. She immediately sent a letter to the Superintendent, because she was informed that if the matter was not cleared up by Monday, September 30, her son could not report to school. She promptly retained counsel, who sent a letter to the Superintendent on October 2 appealing the decision and setting forth the arguments on appeal. That letter, however, crossed with a letter sent the same day by the Superintendent denying petitioner's pro se appeal. On October 9, the Superintendent informed counsel that the matter had already been finalized in response to petitioner's pro se appeal of September 30, per the Superintendent's letter of October 2. Counsel was directed to file an appeal with this court as his only remedy.