William M. DAVIS, Petitioner,

v.

DISTRICT OF COLUMBIA DEPART-
MENT OF EMPLOYMENT
SERVICES, Respondent,

Washington Metropolitan Area Transit
Authority, Intervenor.

No. 85–1620.

District of Columbia Court of Appeals.

Argued March 1, 1988.
Decided May 19, 1988.

Richard W. Galiher, Jr., Washington, D.C., for petitioner.

Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., entered an appearance, for respondent.

John F. Ward, Washington, D.C., for intervenor.

Before PRYOR, Chief Judge, and NEWMAN and BELSON, Associate Judges.

BELSON, Associate Judge:

Petitioner asserts that he is entitled to additional workers' compensation benefits under the District of Columbia Workers' Compensation Act, D.C.Code §§ 36–301 to –345 (1981 & 1987 Supp.). In a proceeding before a hearing examiner, petitioner, a

bus driver, maintained that he injured his back in a work-related fall on January 16, 1984. His employer voluntarily paid him temporary total disability benefits through October 4, 1984. The only substantial issue presented in this appeal is whether the hearing examiner erred in refusing to consider petitioner's entitlement to continue receiving temporary total disability benefits through November 1, 1984, based on *back strain* allegedly caused by the fall. We conclude that the hearing examiner erred in refusing to consider this issue. Accordingly, we reverse and remand for its consideration.

## I.

Petitioner, a bus driver with the Washington Metropolitan Area Transit Authority ("WMATA"), slipped on ice while climbing aboard his bus on January 16, 1984. He sustained a low back injury and was off duty from January 30, 1984, through February 9, 1984. WMATA voluntarily paid petitioner temporary total disability benefits for that period, and again during the period May 4, 1984, through October 4,

1984. On October 4, WMATA terminated benefits.

Petitioner filed the instant claim with the Department of Employment Services ("DOES"), seeking an award of temporary total disability under the District of Columbia Workers' Compensation Act, *supra*, from October 5, 1984, to the present (*i.e.*, the time of the DOES hearing), and continuing, plus medical expenses, interest, attorneys' fees and costs. After an evidentiary hearing, the hearing examiner recommended that petitioner's claim be denied, and the deputy director adopted the recommended compensation order.

■ The hearing examiner determined that petitioner sought compensation *only* on the basis of a fall-produced or fall-aggravated affliction known as stiff-man syndrome [1] and, concluding that petitioner did not have that affliction, denied his claim. Petitioner assigns error to the hearing examiner's decision to frame petitioner's claim as one premised only on stiff-man syndrome.[2] Petitioner contends on appeal that while his claim was premised *in part* on his having developed stiff-man syn-

---

1. Stiff-man syndrome is a rare affliction with less than one hundred cases reported in the medical literature worldwide. It has been described as a generalized process predominantly involving the axial musculature of the paraspinal muscles along the spine from the neck to the sacral region, and consists basically of an inability to relax the muscle because of muscle hypertensity secondary to overactive nerve impulses to the muscles. There are many theories of the causes of stiff-man syndrome. Petitioner contended that it caused him to walk with his feet plantar-flexed, *i.e.*, on tiptoes. While the affliction is spelled "stiff-man syndrome," *see* DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1298 (26th ed. 1981), in the record it also has been referred to variously as "Stiffman's Syndrome," "Stiff Man Syndrome," and "Stiff Man's Syndrome."

2. Petitioner also raised the issue of whether substantial evidence exists to support the hearing examiner's conclusion that petitioner does not have stiff-man syndrome and that, even if he did have that condition, it did not arise out of and in the course of his employment, and that his work-related injury was not a precipitating factor in progression of the stiff-man syndrome. We dispose of this issue summarily, as we find more than substantial evidence to support the hearing examiner on this point. *E.g.*,

*Jadallah v. District of Columbia Dep't of Employment Servs.*, 476 A.2d 671, 675 (D.C.1984) (" 'we should not disturb a decision if it rationally flows from the facts relied upon, and those facts or findings are substantially supported by the evidence of record,' " (quoting *Kramer v. District of Columbia Dep't of Employment Servs.*, 447 A.2d 28, 30 (D.C.1982))). Dr. John Blazina testified that petitioner did not have stiff-man syndrome, both because petitioner's symptoms differed from those associated with the disease and also because nothing in the medical literature indicates a relationship between trauma and this affliction. Dr. Blazina's opinion was supported by the testimony of Dr. Michael Dennis, who identified stiff-man syndrome as a rare disease, with only about a hundred cases reported in the world-wide medical literature, in which "trauma to the low back region plays [no] role at all." In addition, Dr. Dennis testified that trauma to the low back could not aggravate a pre-existing stiff-man syndrome. In light of the foregoing, and because "[a]n agency's findings of fact are conclusive on this court if supported by substantial evidence in the record," *Liberty v. District of Columbia Police & Firemen's Retirement & Relief Bd.*, 452 A.2d 1187, 1189 (D.C.1982), we reject petitioner's contention that substantial evidence does not support the hearing examiner's conclusions on the issue of stiff-man syndrome.

drome as a result of the fall, the claim was premised *also* on *back strain* resulting from the fall, and he was entitled to benefits on the latter basis. Therefore, petitioner argues, the hearing examiner erred in "limit[ing] the inquiry to whether the work-related trauma was a precipitating factor of the Stiffman's Syndrome."

The record discloses that at the formal hearing held on April 5, 1985, the hearing examiner framed the inquiry in broad terms, as follows:

Whether an injury occurred on January 16, 1984; whether the injury arose out of and in the course of employment; the nature and extent of the disability and what the applicable compensation rate is in this particular case.

The hearing consisted only of opening statements and testimony by petitioner. Petitioner described the circumstances of his injury and the treatment he had received to date. The parties requested, and the hearing examiner provided, that the record be left open for post-hearing depositions of Dr. Rudiger Kratz, a neurologist; Dr. Michael Dennis, a neurosurgeon; Dr. John Blazina, also a neurologist; and petitioner's wife.

When the hearing came to a close, the hearing examiner asked how the parties wished to handle closing arguments. Intervening employer's attorney responded that

it will be difficult to make a closing statement now. I will be honest with you, I don't know what Dr. Dennis and Dr. Blazina is [sic] going to say in light of the evidence as I have indicated before.... I'm just saying that at this point we are in the dark. So I think it is better to get the testimony from Dr. Kratz and the other two medical experts....

The hearing examiner and the parties then agreed to the submission of written closing arguments, and the hearing examiner explained that "I don't expect a full statement of the case. Even a short letter briefly just summarizing will be sufficient." Notably, the record reveals no conditions relating to or limiting the scope of the inquiry.

After the hearing, and in accord with the hearing examiner's instruction, the parties took medical depositions. The deposition of Dr. Dennis is most significant for purposes of this appeal. Dr. Dennis first examined petitioner on February 16, 1984, and concluded, despite the absence of "objective physical findings," that petitioner "had sustained a strain syndrome." After several intervening examinations,[3] Dr. Dennis once again examined petitioner on July 16, 1984, and reported that petitioner "felt he could not return to his occupation because of his back discomfort. His exam remained unchanged." Dennis directed that he obtain an orthopedic evaluation "[t]o see if there was some possibly arthritic cause I was not aware of, of his inability to walk on his heels." Dr. Dennis examined petitioner again on November 1, 1984, by which time petitioner had been diagnosed by Dr. Marvin Korengold, also a neurosurgeon, as having primary lateral sclerosis. Dr. Dennis did not agree with that diagnosis and, upon examining petitioner on November 1, found his condition was "basically unchanged." Dennis stated that as of November 1, 1984, "the patient didn't have any evidence of a work-incurred disability." Significantly, Dr. Dennis' testimony included the following:

Q. Do you know what he [petitioner] has?

A. No, I do not.

---

**3.** Dr. Dennis next examined Davis on April 23, 1984, and Davis complained for the first time of an "inability to walk in a normal heel to toe fashion. And he had a tendency to walk on his toes." Dr. Dennis' diagnosis "did not" change in any way, however. The next visit was July 5, 1984, at which time Davis "continued to experience inability to walk on his heels. And at that time he experienced some difficulty dorsi-flexing his feet, meaning pulling the feet up." At

this point Dr. Dennis examined Davis' shoes, which were only a few months old, and noticed that they appeared to be wearing down evenly on both heels. This suggested to Dr. Dennis that "at some point he obviously was walking on the heels." There were no other significant clinical findings as of July 5, and Dr. Dennis testified that he "could not find an organic cause for the patient's particular problem."

My belief is that—I know what he dosen't have, let's put it that way.

Q. I understand.

Well, given your course of treatment, your findings and particularly the flexion restrictions and occasional straight leg raise; *you are saying he had a back strain up until November one, is that right?*

A. Yes.

Q. That's with reasonable medical certainty?

A. Yes.

(Emphasis supplied). In addition, Dr. Dennis had earlier testified as follows:

Q. And when, based upon the histories obtained, findings made upon your examination, records reviewed, as well as diagnostic studies, when would those residuals or impairment have resolved?

A. I would say that most, the most reasonable date for that would have been November first, 1984.

Q. Doctor, as of that date, what restrictions and limitations would you have recommended upon the patient's physical and/or his work activities as a result of the injury which you have opinioned that he sustained on January 11, 1984?

A. None.

Once the depositions had been taken, the parties submitted their written closing arguments in accordance with the hearing examiner's direction. Included in petitioner's post-hearing memorandum was the argument, based on the above colloquy, that

[g]iven the testimony by Dr. Dennis in this record, and no other evidence pro or con on this issue from any other physicians, the Hearing Officer can find that the Claimant's compensation for *back-related strain* was terminated prematurely....

(Emphasis supplied). In making this argument, petitioner was relying upon Dr. Dennis' testimony that petitioner had a back strain until November 1, 1984, some twenty-seven days after his employer terminated compensation.[4]

In due course the hearing examiner issued a proposed compensation order. In that order, the examiner found that "claimant does not have Stiffman's Syndrome and that the condition ... diagnosed as Stiffman's Syndrome did not arise out of and in the course of claimant's employment." The hearing examiner also concluded, however, and this is the basis for the instant appeal, that

the question of claimant's disability [as] related to his back strain was not properly raised, the record on the issue was not developed, the employer did not address the question and the dates of disability claimant requests are not supported by the record. Therefore, this issue will not be considered herein.[5]

---

4. Petitioner's counsel stated during oral argument that even though recovery based upon a theory of back strain might realize for petitioner only an additional twenty-seven days of compensation, it would also have an important bearing on award of costs and attorneys' fees.

5. The hearing examiner's decision not to consider the issue of back strain was contained in footnote one of her report. That footnote states in full:

Claimant argues in his brief that he is entitled to benefits based upon his back strain from October 25, 1984, "which the carrier chose as their date for termination of compensation" until November 1, 1984, the date Dr. Dennis felt claimant's disability had ended "irrespective of the Stiff-man's Syndrome." Claimant's Brief at 13. Claimant did not make this argument at the formal hearing. Rather, claimant limited the inquiry to whether the work trauma was a precipitating factor of the Stiffman's Syndrome. At the formal hearing and in its brief, employer commented only on the

nature and extent of the disability related to the Stiffman's Syndrome. The parties took several post-hearing depositions and developed evidence concerning the claimant's disability from Stiffman's Syndrome exclusively. Further, the parties stipulated that the employer paid temporary total disability benefits until October 4, 1984 not, as claimant suggests in his closing remarks, October 25, 1984. Finally, in his opening statement, claimant stated that Dr. Dennis concluded as early as April 23, 1984 that claimant's main problem was an inability to walk on his heels and not chronic back strain. Accordingly, I conclude that the question of claimant's disability related to his back strain was not properly raised, the record on the issue was not developed, the employer did not address the question and the dates of disability claimant requests are not supported by the record. Therefore, this issue will not be considered herein.

Petitioner filed exceptions to the proposed compensation order, most specifically the hearing examiner's conclusion that petitioner was precluded from raising the issue of back strain. In his statement of exceptions to the proposed compensation order, petitioner challenged the hearing examiner's decision not to consider back strain, arguing

> that once the issues were drawn in the understanding of the Hearing Officer, she gave no leeway during trial of the case or in footnote 1 for the receipt or admissibility of additional information favorable to the Claimant's case for additional compensation benefits since it was developed in post-hearing depositions. Since neither party was aware of Dr. Dennis' view of disability at the time of the opening statement of Claimant and the Employer or during the trial of the case before the Administrative Law Judge, this evidence was not available until the post-hearing depositions and briefs. *If post-hearing depositions are going to be allowed before this agency, then the Hearing Officers are going to have to allow the necessary leeway that information developed subsequent to the hearing must indeed be accepted and not disallowed as such information was in this case....* Claimant asserts that his claim as stated for continuing temporary total [disability benefits] did not limit the Hearing Officer's inquiry only to whether work trauma was a precipitating factor of the Stiffman's Syndrome, but his claim for continuing temporary total benefits due to that injury, and it is the Hearing Officer who chose to narrow her consideration of the temporary total issue to whether or not the Stiffman's Syndrome was a precipitating or causally related factor.

(Emphasis supplied).

## II.

Under the District of Columbia Administrative Procedure Act, which governs proceedings before DOES, a hearing examiner's decision in a contested case must include "a concise statement of the conclusions upon each contested issue of fact." D.C. Code § 1–1509(e) (1987). The DOES hearing examiner "shall inquire fully into matters at issue and shall receive in evidence the testimony of witnesses and any documents which are relevant and material to such matters." 7 DCMR § 223.3 (1986); *see, e.g., Ferreira v. District of Columbia Dep't of Employment Servs.*, 531 A.2d 651, 658 (D.C.1987) (petition for rehearing *en banc* pending). "Every decision and order adverse to a party to the case ... shall be accompanied by findings of fact and conclusions of law.... Findings of fact and conclusions of law shall be supported by and in accordance with the reliable, probative, and substantial evidence." D.C. Code § 1–1509(e).

█ In the instant case, we confront a situation in which the hearing examiner made an affirmative decision not to address an issue a party attempted to raise, *viz.*, whether claimant was disabled due to back strain caused by a work-related injury. Ordinarily, " '[i]f the agency fails to make a finding on a material, contested issue of fact, this court cannot fill the gap by making its own determination from the record, but must remand the case for findings on that issue.' " *Nursing Servs., Inc. v. District of Columbia Dep't of Employment Servs.*, 512 A.2d 301, 303 (D.C.1986) (quoting *Colton v. District of Columbia Dep't of Employment Servs.*, 484 A.2d 550, 552 (D.C.1984)); *Lee v. District of Columbia Zoning Comm'n*, 411 A.2d 635, 639 (D.C. 1980).

Thus, we must determine if there was a material and contested issue with respect to whether a work-related back strain gave rise to a disability in petitioner after October 4, 1984. We first consider whether this was a contested issue. Petitioner raised the issue of back strain in his post-hearing memorandum, which the hearing examiner had explained would be in the nature of written closing arguments.[6] Thus, it was

---

6. At the hearing, the examiner explained that counsel could "make them now or submit a short summary of the medical evidence." Counsel agreed on the latter, written approach.

not because she did not realize it had been raised that the hearing examiner failed to address the issue. Rather, aware that petitioner advanced back strain as a basis for compensable disability, the hearing examiner made an affirmative decision not to consider the issue. For purposes of this appeal, in deciding whether the issue was truly a contested one, we must examine the record to determine if there are sufficient indicia of factual development on the point in contention to raise petitioner's "contest" of that issue to something more than a bald assertion of a theory of recovery for which the record contains no evidentiary basis of support. We are satisfied that Dr. Dennis' testimony, quoted above, provides an evidentiary foundation sufficient to make this a contested issue. This is not to say that we are reaching the question whether there was substantial evidence to support a finding in favor of petitioner on this issue for, as we explain below, in circumstances like those present here that question should be addressed in the first instance by the agency.

With respect to materiality, we observe that this court has stated that "an issue is not necessarily 'material' simply because evidence was presented on the point at the hearing." *Lee, supra,* 411 A.2d at 638. Accordingly, were we to conclude that the question of back strain is not material to resolution of petitioner's claim for disability compensation, then the hearing examiner's failure to consider the question should not result in a reversal because "an administrative agency does not have to make findings of fact upon contentions that are collateral or immaterial." *Id.* (citing *Minneapolis & St. Louis Ry. Co. v. United States,* 361 U.S. 173, 80 S.Ct. 229, 4 L.Ed. 2d 223 (1959)). On the record before us, however, we have little difficulty concluding that the issue of back strain was material to the hearing examiner's determination regarding disability benefits. If, upon considering the matter, the hearing examiner had concluded that petitioner's work-related fall had resulted in back strain that prevented him from returning to work until November 1, 1984, undoubtedly she would have recommended compensation for that period. Since compensation was the bone of contention, the question of back strain (whether petitioner had it, how it happened, and whether it prevented him from returning to work) was clearly material to the hearing examiner's inquiry.

Yet the hearing examiner apparently determined that petitioner's failure to identify the issue in question before or during the hearing precluded him from raising it after the hearing. While there is support for the proposition that this court will sustain a determination that a petitioner is precluded from raising issues not advanced before the conclusion of the hearing, *1880 Columbia Rd., N.W., Tenants' Ass'n v. District of Columbia Rental Accommodations Comm'n,* 400 A.2d 333, 339 (D.C.1979) (citing *John D. Neumann Properties, Inc. v. District of Columbia Bd. of Appeals and Review,* 268 A.2d 605, 606 (D.C.1970)), we think the peculiar procedural posture of the instant case makes it distinguishable. It is true that snippets in the record suggest that the parties and the hearing examiner may have agreed among themselves, either explicitly or implicitly, that petitioner's case would rise or fall on the issue of stiff-man syndrome.[7] This is not, however, a case

---

In his post-hearing submission, petitioner argued that "[g]iven the testimony by Dr. Dennis in this record, and no other evidence *pro* or *con* on this issue from any other physicians, the Hearing Officer can find that the Claimant's compensation for back-related strain was terminated prematurely...." Petitioner noted that this could be significant in terms of "permitting reimbursement of Claimant's costs and, giving Claimant's attorney a *de minimis* fee pursuant to the 20% limitation of benefits provision currently existent under the Act."

7. For example, petitioner's counsel asserted in his opening statement before the hearing examiner that

> ... *what we are saying ... is that ... it is more probable, and therefore, it is provable with reasonable medical certainty that this condition of Stiff Man's Syndrome was precipitated, caused, aggravated, accelerated or whatever term contributed to by the injury, in the nature of an aggravation of a previously perhaps asymptomatic condition.*
>
> Now, I am not going to admit that that was there previously. This—Dr. Hurston says it was a pre-existing condition. Dr. Dennis says

where the petitioner, having seen the proposed compensation order and realizing his failure to convince the examiner that compensation was due, attempted to take a second bite at the apple by advancing a new theory of recovery. Thus, the instant case is distinguishable from *1880 Columbia Rd., N.W., Tenants' Ass'n v. District of Columbia Rental Accommodations Comm'n*, 400 A.2d 333 (D.C.1979), in which this court sustained a Commission determination "that petitioner was precluded from raising this issue since petitioner had failed to raise the issue at the Examiner's hearing." *Id.* at 339. There the court noted that "[o]nly after the hearing was the issue raised concerning the burden of proof, and then only indirectly in a letter from a representative of petitioner's association to the Hearing Examiner." *Id.* Rather, the instant case is more akin to a proceeding in which the hearing examiner failed to consider an issue raised during the hearing itself.

The hearing examiner stated in her report that "[petitioner] did not make this argument [regarding back strain] at the

formal hearing." It is true that, at the hearing, petitioner did not raise the issue of back strain with the same degree of specificity as he raised the issue of stiff-man syndrome. But, as the opening statements at the hearing demonstrated, neither party was prepared at that time to raise, let alone prove or disprove, the various possible theories of recovery. This is because the parties adduced no medical testimony at the hearing. Each of the key physicians quoted in the hearing examiner's report (Kratz, Blazina, Dennis) testified *after* the hearing itself. Thus, contrary to the hearing examiner's implicit suggestion, this is not a case in which the record had been well developed before the hearing but was left open at the last minute for one reason: additional evidence concerning stiff-man syndrome. In fact, it is improbable that, on the record as it existed at the close of the hearing itself, the hearing examiner could have reached any decision at all. The only witness at the hearing was petitioner, and he merely recounted the circumstances of his fall and his numerous visits with doctors. This state of the record accounts for the hearing examiner's decision to leave the

---

it was a pre-existing condition. If it was there, it was asymptomatic. It was unknown and it was undiagnosed. *The way I see the case, what happens is he has the back injury and that precipitates the Stiff Man Syndrome as time goes on, as he attempts to work and the condition just completely worsens, and it goes from his back to his legs and then up to his back at times again.*
(Emphasis supplied).
He added, however, that
I think this is all related to one injury, that is the January 16 of '84, but if you are inclined to think that maybe this is a combination of both a related condition, that is the back condition and an unrelated condition, that is the neuro-muscular disorder of Stiff Man's Syndrome, you can still find under the law that he is entitled to temporary total disability benefits.
Following petitioner's opening statement, WMATA's attorney presented an opening statement of his own:
I think I am going to be very brief at this point.
Certainly there has been a recent development in this case; i.e., the contention that Mr. Davis has Stiff Man's Syndrome, and I think basically what we are dealing with at this point is a question of one, does he have Stiff

Man's Syndrome and is that the appropriate diagnosis as the claimant contends; and two, even assuming that he does have it, is it causally related to this episode on January 16, 1984?
At this point, I'll be honest, I don't know what the outcome of this case is going to be. The medical information and the contention that he has Stiff Man's Syndrome which is causally related to the January 16, '84 episode is of very recent origin, even though the claim dates back over a year ago.
Maybe all the doctors; i.e., when Dr. Dennis examines this individual again, we get back to Dr. Blazina and see what he has to say, maybe they will all be in agreement that he does have Stiff Man's Syndrome. Maybe all the doctors will be in agreement that it is causally related to this accident of January 16, 1984. I don't know the answer now, and I will be honest with you, and that was one of the reasons I felt it might be appropriate to continue it, but we will proceed now and we will see what the medical evidence says, and if there is a dispute, then you will have to weigh that.
I think the employer will take the appropriate position. If there is no dispute and everyone is in agreement, I'm sure the carrier will pick it up and pay it.

record open after the hearing.[8]

Given that (1) the record was left open for depositions, and that Dr. Dennis' deposition contained testimony that arguably supports the position that petitioner's work-related back strain caused disability until November 1, 1984, and (2) petitioner made this argument before close of the record, we conclude that the hearing examiner was obliged at least to *consider* that issue. Although the hearing examiner took the view that the record was left open for a discrete purpose, *viz.*, the consideration only of stiff-man syndrome, the record before us does not support such a contention. First, the language quoted above, *supra* at 817, with which the hearing examiner opened the hearing, is most general in nature; nowhere in the record, aside from the compensation order itself, is it suggested, let alone documented, that the sole contention post-hearing was whether petitioner had stiff-man syndrome and, if so, whether that affliction was caused or aggravated by his work-related fall. Furthermore, the record does not support the hearing examiner's statement in footnote 1 that "[t]he parties took several post-hearing depositions and developed evidence concerning the claimant's disability from Stiff-man's Syndrome *exclusively*." (Emphasis supplied). Our review of the post-hearing depositions reveals that they were not limited to stiff-man syndrome. In fact, the depositions covered a broad range of matters pertaining to petitioner's physical condition. While stiff-man syndrome was clearly a major issue of contention in the depositions, it certainly was not the only issue explored.

■ Accordingly, because the hearing examiner left the record open without any indication that the post-hearing inquiry was limited to the matter of stiff-man syndrome, and because Dr. Dennis' testimony at least arguably supports the proposition that petitioner experienced until November 1, 1984, a work-related disability due to back strain, the hearing examiner was obliged to consider this material, contested issue. We decline the employer's invitation to scrutinize Dr. Dennis' testimony closely with a view to determining whether it affords substantial evidence to support a conclusion that petitioner's back strain gave rise to a disabling injury during the time period in dispute. It is inappropriate, except possibly in a clear case, for an appellate court to assume the role of making such determinations in the first instance. Rather, the orderly processes of administrative law include the agency's initial determination of such matters.

In light of the foregoing, we reverse and remand this case for findings of fact and conclusions of law on the narrow question of whether petitioner is due compensation benefits for the period between October 4 and November 1, 1984, by reason of back strain caused by the work-related injury of January 16, 1984.

*Reversed and remanded.*

---

8. Although DOES regulations provide that where a hearing examiner "believes that there is relevant and material evidence available which has not been presented at the hearing, the hearing may be adjourned or, at any time prior to filing of the compensation order, the hearing may be reopened for the receipt of the evidence," 7 DCMR § 223.4 (1986), we note that "[o]rdinarily, the record closes upon termination of the hearing below," except for post-hearing submission of memoranda. *Harris v. District of Columbia Rental Housing Comm'n,* 505 A.2d 66, 69 (D.C.1986). "[W]here an agency deviates from this course, it must notify the parties to an administrative hearing that new evidence is being officially noticed in order to give the parties sufficient opportunity to make an appropriate challenge or response." *Williams v. District of Columbia Bd. of Zoning Adjustment,* 535 A.2d 910, 912 n. 3 (D.C.1988) (citing *Carey v. District Unemployment Compensation Bd.,* 304 A.2d 18, 20 (D.C.1973)).