James V. ECKERT, Petitioner,

v.

DISTRICT OF COLUMBIA POLICE AND FIREFIGHTERS' RETIRE-MENT AND RELIEF BOARD, Respondent. (PD–1019–05).

No. 05–AA–1068.

District of Columbia Court of Appeals.

Argued Feb. 28, 2007.

Decided May 17, 2007.

James W. Pressler, Jr., Washington, DC, for petitioner.

Pastell Vann, Senior Assistant Attorney General, with whom Robert J. Spagnoletti, Attorney General for the District of Columbia at the time the brief was filed, Todd S. Kim, Solicitor General, and Edward Schwab, Deputy Solicitor General, were on the brief, for respondent.

Before RUIZ and FISHER, Associate Judges, and KING, Senior Judge.

KING, Senior Judge:

Petitioner, James V. Eckert, seeks review of a final decision of the District of Columbia Police and Firefighters' Retirement and Relief Board ("Board"), issued on August 26, 2005, which found him incapacitated for further duty with the Metropolitan Police Department ("MPD") due to a disabling physical injury sustained in the performance of duties. The Board retired Eckert under the provisions of D.C.Code § 5–710(e)(1) (2001), and calculated his annuity pursuant to D.C.Code § 5–710(e)(2)(A–D) (2001). The only issue before this court is whether the Board adequately considered Eckert's psychological conditions in calculating his percentage of disability in the formula set out in 7 DCMR § 2515.3 (2007). Because we conclude that Eckert's psychological condition was contested at the hearing, we remand for the Board to make findings of fact on that issue.

## I.

### A. Factual Background

Eckert, a nine-year veteran officer of MPD, sustained multiple injuries during a motor vehicle collision while on duty on March 25, 2004. Over the course of the following few weeks, Eckert was evaluated and treated for his physical injuries at the Police and Fire Clinic, ultimately returning to full duty on April 15, 2004. However, Eckert experienced difficulty in the performance of his duties, and after being evaluated by neurologist Dr. David Moore, returned to sick leave on May 1, 2004. Over the next several months, Eckert saw various doctors and was diagnosed with "postconcussive syndrome with insomnia and cognitive problems" and "gradually improving posttraumatic stress syndrome."[1]

On August 26, 2004, Eckert underwent a comprehensive neuropsychological evaluation at the National Rehabilitation Hospital by Dr. Roebuck–Spencer and Dr. Garmoe. The evaluation indicated that Eckert suffered from worsening emotional difficulties and diagnosed him with Post–Traumatic Stress Disorder ("PTSD") and associated depression. It also indicated that his cognitive difficulties should improve once his associated emotional symptoms were resolved, and that his current cognitive capacity was stable enough for him to return to normal activities. Eckert was re-evaluated by Dr. Moore on September 7, 2004 and again diagnosed with PTSD that was being treated separately with psychiatric care.

---

1. Because Eckert's physical injuries and resulting disability are not being challenged, discussion of the medical evidence will be limited to psychological diagnoses only.

Concurrently, from June 7, 2004 through January 19, 2005, Eckert was under the psychological care of the Behavioral Health Services ("BHS") division of the Police and Fire Clinic. The diagnoses and reports largely mirrored those of the aforementioned specialists, namely that Eckert suffered from PTSD, depression, and anxiety. At some point around November 2004, Eckert's "behavioral health" issues were determined to be non-performance of duty ("non-POD").[2] BHS sent a letter to Eckert on January 13, 2005, indicating that due to this determination, it would no longer be able to provide him with psychiatric services, and that he should seek care from an outside provider. Eckert's final evaluation from the BHS psychiatrist, Dr. Nunez, stated that she "strongly recommended" that Eckert continue treatment in a private setting. During his last appointment with BHS on January 19, 2005, the psychologist, Dr. Jackson, indicated that Eckert was cleared for full duty, and his PTSD was "improved," but that he should seek outside psychological treatment.

### B. Proceedings Before the Board

The Board held a hearing on Eckert's case on April 28, 2005. The hearing began with testimony from Dr. Martin Rosenthal, M.D., the director of the Police and Fire Clinic, who stated that Eckert's psychological issues had been resolved, and that therefore further expert testimony on the matter would not be necessary. The Board made reference to the fact that it would consider postponing the hearing if it became clear that petitioner's psychological issues were not resolved; however, Eckert's counsel never requested a continuance. Nonetheless, over the course of the hearing, Eckert's counsel repeatedly questioned the determination that Eckert's

psychological issues were resolved. Counsel argued that the evidence that Dr. Rosenthal was relying on was inaccurate and out-of-date; however, Eckert never provided any evidence of his current mental abilities, and he made an admittedly strategic decision not to request a continuance in order to do so.

The Board issued its order on August 26, 2005, finding that Eckert's physical condition permanently disabled him from useful and efficient service with MPD and calculating his annuity accordingly. The Board's order made clear findings of fact regarding Eckert's physical injuries but was largely silent as to petitioner's mental capabilities and psychological functioning. The Board quoted a few segments of the neurological evaluation from the National Rehabilitation Hospital evaluation, stating that it diagnosed Eckert with "mild traumatic brain injury with residual cognitive and emotional difficulties." The Board then quoted the conclusion of the evaluation that Eckert's "current cognitive capacity [is] stable enough for him to return to normal activities."

### II.

■ Our review of a decision of the Board is to ensure that it "(1) made findings of fact on each material, contested factual issue, (2) based those findings on substantial evidence, and (3) drew conclusions of law which followed rationally from the findings." *Bausch v. District of Columbia Police & Firefighters' Retirement & Relief Bd.*, 855 A.2d 1121, 1124 (D.C. 2004) (quoting *Beckman v. District of Columbia Police & Firefighters' Retirement & Relief Bd.*, 810 A.2d 377, 384 (D.C. 2002)). Eckert argues that the Board failed to make findings of fact on a material, contested issue, namely his current psy-

---

**2.** Petitioner does not challenge this determination.

chological condition. Respondent counters by stating that specific findings of fact on Eckert's psychological condition were not necessary because it was neither material nor contested. We disagree on both counts.

The material issues in determining an officer's annuity are largely outlined by the relevant statute and regulations. *See* D.C.Code § 5–710(e) (2001); 7 DCMR § 2515.3 (2007). The Board found that Eckert's physical disabilities were sustained during performance of duty, and that they were permanently disabling. It then calculated his percentage of disability based on his physical limitations, without addressing his psychological conditions (even if not the result of the performance of duty, see note 2, *supra*). It is clear that psychological conditions are properly considered in a determination of disability, *see Beckman*, 810 A.2d at 384, and if properly established by evidence, limitations due to mental health issues could affect a petitioner's wage-earning capacity.[3] Thus factual findings on petitioner's psychological issues are material to a determination of percentage of disability. *Cf. Davis v. District of Columbia Dep't of Employment Servs.*, 542 A.2d 815, 820 (D.C.1988) (holding that issue of back strain was material because it would have affected hearing examiner's decision to grant compensation).

"[I]n deciding whether [an] issue was truly a contested one, we must examine the record to determine if there are sufficient indicia of factual development on the point in contention to raise petitioner's 'contest' of that issue to something more than a bald assertion of a theory of recovery for which the record contains no evidentiary basis of support." *Davis*, 542 A.2d at 820. In the instant case, counsel indirectly questioned the determination that Eckert's psychological difficulties were resolved and he observed that those issues would have a bearing on Eckert's ability to work at other jobs. Moreover, the most recent psychological reports, which indicated that Eckert was being discharged from the BHS division of the Police and Fire Clinic, also encouraged him to continue to seek mental health treatment with private health care providers. We are satisfied that these circumstances were sufficient to alert the Board to the fact that Eckert's psychological issues were contested, and thus to trigger its obligation to make factual findings.[4]

Although we conclude that a remand is required, we note that counsel for petitioner had ample opportunity to take appropriate steps before the Board which would have avoided the need for this appeal. For example, the Board made it

---

3. In calculating percentage of disability, D.C.Code § 5–710(e)(2)(B) provides that the Board must take into account:

 (i) The nature of the injury or disease;
 (ii) The percentage of impairment reported pursuant to subparagraph (A) of this paragraph;

 . . . .

 (v) Any other factors or circumstances which may affect the capacity of the member to earn wages or engage in gainful activity in his disabled condition, including the effect of the disability as it may naturally extend into the future.

4. Respondent alternatively contends that the Board did make findings of fact on Eckert's psychological conditions in its order, citing the portion that states "the evaluation [by Drs. Roebuck–Spencer and Garmoe from the National Rehabilitation Hospital] deems Member's current cognitive capacity stable enough for him to return to normal activities." We have previously held that merely "summariz[ing] or restat[ing] the testimony and evidence" does not constitute fact-finding, *see Perry v. Police & Firemen's Retirement & Relief Bd.*, 451 A.2d 88, 90 (D.C.1982), and we are not convinced that the Board did anything more than that here.

abundantly clear that it would continue the hearing if counsel explicitly indicated he was not satisfied that Eckert's psychological issues had been resolved. Additionally, the Board indicated that it would be willing to allow counsel to call Eckert's treating psychologist as a witness if he wished to present her testimony. Furthermore, once it became clear to counsel, after the Board issued its order in which it did not make findings regarding Eckert's psychological condition, he could have petitioned the Board for reconsideration, making the same arguments that were presented in this appeal. *See* 7 DCMR § 2525 (2007). Counsel chose to avail himself of none of these options. Nevertheless we are obligated to remand the case so that the Board can make appropriate findings on this issue.[5]

*So ordered.*

---

**5.** "When the agency fails to make a finding on a material, contested issue, 'this court cannot fill the gap by making its own determination from the record, but must remand the case for findings on that issue.'" *Fontenot v. District of Columbia Dep't of Employment Servs.,* 804 A.2d 1104, 1107 (D.C.2002) (quoting *Colton v. District of Columbia Dep't of Employment Servs.,* 484 A.2d 550, 552 (D.C.1984)).

We express no opinion as to the merits of petitioner's psychological claims, and we remand this case to the Board to review the evidence presented, make findings of fact, and reach appropriate conclusions on the narrow question of whether Eckert suffers from psychological conditions that affect his percentage of disability.